IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MICHAEL G. DOUGLAS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:19-cv-2824-BN |
| | § | |
| BEN E. KEITH COMPANY, | § | |
| | § | |
| Defendant. | § | |

## **MEMORANDUM OPINION AND ORDER**

This is a disability-discrimination case brought by Plaintiff Michael G. Douglas against his former employer Defendant Ben E. Keith Company. Douglas alleges that BEK fired him because of injuries he sustained during a workplace accident.

BEK has filed a motion for summary judgment. *See* Dkt. No. 12. Douglas filed a response, *see* Dkt. No. 20, and BEK filed a reply, *see* Dkt. No. 21.

Because Douglas fails to make a prima facie case of disability discrimination and fails to rebut BEK's non-discriminatory reasons for terminating his employment, the Court grants the motion.

### **Background**

Douglas began working at BEK as a sales representative in February 5, 2009. BEK is a wholesale distributer with operations throughout Texas.

On May 26, 2016, while working in a Walmart-owned trailer, Douglas was electrocuted by exposed wires when he tried to turn on a light switch. *See* Dkt. No. 14 at 13. The shock caused Douglas to step backward and fall. *See id.* Douglas felt

"instant pain" in his "neck, lower back, and hip," a "bad" headache, blurred vision, slurred speech, and a "copper taste." *Id.*

The next day, BEK sent Douglas to see a doctor. The doctor prescribed Douglas pain medication and released Douglas to return to regular duty immediately. *See id.* at 110. At a follow-up visit a few days after, the doctor confirmed that Douglas was released for regular duty. *See id.*

A month later, Douglas saw a different doctor who diagnosed him with back and neck strain. *See id.* The doctor prescribed four-to-six physical therapy sessions and reaffirmed that Douglas could complete his normal work duties. *See id.* After completing his physical therapy over several weeks, Douglas returned for a follow-up. *See id.* The doctor prescribed four more physical therapy sessions for Douglas's persistent back pain and affirmed that Douglas could return to work with no restrictions. And, four weeks after that, on August 24, 2016, Douglas came back for another appointment. *See id.* The doctor referred Douglas to a massage therapist for two sessions and released him to full duty. *See id.*

While Douglas received treatment, BEK required him to write down on his supervisor's calendar when he would be out of work for his therapy appointments. *See id.* at 181. For the month of September 2016, Douglas wrote down three sessions: September 13, 2016 – "Therapy 2:30 N. Dallas"; September 15, 2016 – "Therapy Leave @ 3:00 p.m."; and September 22, 2016 – "Therapy 2:30 N. Dallas." *Id.* at 181-82.

On September 23, 2016, a BEK manager informed BEK's human resources manager that he saw Douglas at home before the work day was over on two different

occasions. *See id.* at 50-51. The first happened on September 15, 2016 when the manager saw Douglas at home "around 3:45 p.m." hooking a camper to his truck. *Id.* The second happened on September 22, 2016, when the manager saw Douglas at home loading an ice chest at "around 3:30 p.m." *Id.*

Because of this report, BEK investigated Douglas's massage therapy appointments. It discovered that Douglas went to appointments on September 13, 2016 from 3:00 p.m. until 4:45 p.m. and on September 22, 2016 from 12:00 until 1:30 p.m. and that Douglas did not have a massage therapy appointment on September 15, 2016. *See id.* at 110, 121. Because the appointments did not match Douglas's calendar entries, BEK asked Douglas for paperwork from his appointments. *See id.* at 181. The documents that Douglas provided confirmed BEK's initial findings. *See id.* at 199. And BEK learned from Douglas's massage therapist that, on September 27, 2016, Douglas had a "drop-in" massage and tried to convince her to "amend" her records to show that he had attended an appointment on September 15, 2016. *Id.* at 169.

On October 6, 2016, BEK confronted Douglas about the discrepancies. *See id.* at 176-77. Douglas stated that he had tried to see a chiropractor on September 15, 2016; that he had left BEK at the times that he wrote down on the calendar; and that he was home because his work was complete and he needed to shower to remove the lotion and oils from the massages. *See* Dkt. No. 20 at 5-9. After the meeting, BEK placed Douglas on administrative leave. *See* Dkt. No. 14 at 177.

The next day, Douglas's coworker informed BEK managers that, on several occasions, including September 15, 2016, Douglas asked the coworker to clock him out because he was not coming back to work. *See* Dkt. No. 14 at 171-72, 178.

On October 11, 2016, BEK fired Douglas for violating company policies. *See id.* at 200.

And, on November 26, 2019, Douglas filed this suit. *See* Dkt. No. 1. Douglas brings one claim for discrimination under the Americans with Disabilities Act. *See id.*

BEK then filed its summary judgment motion. *See* Dkt. No. 12. BEK contends that Douglas's claim fails because he failed to make a prima facie case of discrimination and because it had legitimate, non-discriminatory reasons for terminating Douglas. *See* Dkt. No. 13.

Douglas argues that summary judgment is not appropriate because he has made a prima facie case of discrimination. *See* Dkt. No. 20. And Douglas asserts that none of the allegations against him are true and that BEK's reasons for termination are pretextual. *See id.*

## Legal Standards

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual "issue is material if its resolution could affect the outcome of the action." *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir. 2003). "A factual dispute is

'genuine,' if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Crowe v. Henry*, 115 F.3d 294, 296 (5th Cir. 1997).

If the moving party seeks summary judgment as to his opponent's claims or defenses, "[t]he moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact, but is not required to negate elements of the nonmoving party's case." *Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998). "Summary judgment must be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which it will bear the burden of proof at trial. If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (internal quotation marks and footnote omitted).

"Once the moving party meets this burden, the nonmoving party must set forth" – and submit evidence of – "specific facts showing a genuine issue for trial and not rest upon the allegations or denials contained in its pleadings." *Lynch Props.*, 140 F.3d at 625; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *accord Pioneer Expl.*, 767 F.3d at 511 ("[T]he nonmovant cannot rely on the allegations in the pleadings alone" but rather "must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." (internal quotation marks and footnotes omitted)).

The Court is required to consider all evidence and view all facts and draw all reasonable inferences in the light most favorable to the nonmoving party and resolve all disputed factual controversies in favor of the nonmoving party – but only if the summary judgment evidence shows that an actual controversy exists. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Pioneer Expl.*, 767 F.3d at 511; *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005); *Lynch Props.*, 140 F.3d at 625. "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [her] favor. While the court must disregard evidence favorable to the moving party that the jury is not required to believe, it gives credence to evidence supporting the moving party that is uncontradicted and unimpeached if that evidence comes from disinterested witnesses." *Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 942-43 (5th Cir. 2015) (internal quotation marks and footnotes omitted). And "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment," *Brown v. City of Houston,* 337 F.3d 539, 541 (5th Cir. 2003), and neither will "only a scintilla of evidence" meet the nonmovant's burden, *Little*, 37 F.3d at 1075; *accord Pioneer Expl.*, 767 F.3d at 511 ("Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." (internal quotation marks and footnote omitted)).

Rather, the non-moving party must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris*

*v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). And "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Pioneer Expl.*, 767 F.3d at 511 (internal quotation marks and footnote omitted).

"After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." *DIRECTV, Inc. v. Minor*, 420 F.3d 546, 549 (5th Cir. 2005) (footnote and internal quotation marks omitted).

The Court will not assume "in the absence of any proof ... that the nonmoving party could or would prove the necessary facts" and will grant summary judgment "in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little*, 37 F.3d at 1075. "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment," and "[a] failure on the part of the nonmoving party to offer proof concerning an essential element of its case necessarily renders all other facts immaterial and mandates a finding that no genuine issue of fact exists." *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (internal quotation marks omitted).

## Analysis

"The ADA prohibits an employer from discriminating against a 'qualified individual with a disability on the bases of that disability.'" *EEOC v. LHC Group, Inc.*, 773 F.3d 688, 694 (5th Cir. 2015) (quoting 42 U.S.C. § 12112(a)). "In a

discriminatory-termination action under the ADA, the employee may either present direct evidence that she was discriminated against because of her disability or alternatively proceed under" the *McDonnell Douglas* burden-shifting analysis by first establishing a *prima facie* case. *Id.* (internal quotation marks omitted). If the employee meets this burden, the burden then shifts to the employer to "articulate a legitimate, nondiscriminatory reason for terminating the employee." *Id*. And, if the employer meets its burden, the burden again shifts back to the employee to show that the employer's purported reason is pretextual. *See id.*

"A *prima facie* case under the ADA requires: (1) that the plaintiff has a disability; (2) that he was qualified for the job; and (3) that the employer's adverse employment decision was a result of his disability." *Diggs v. Burlington N. & Santa Fe Ry. Co.*, 742 F. App'x 1, 3 (5th Cir. 2018) (per curiam) (citing *LHC Grp.*, 773 F.3d at 694).

Douglas fails to make a prima facie case because he failed to show he has a disability.

The ADA defines "disability" as: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1).

Douglas fails to show that he has an actual disability "that substantially limits one or more major life activities."

> An impairment is a disability within the meaning of
> [§ 12102] if it substantially limits the ability of an

> individual to perform a major life activity as compared to most people in the general population. An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting. Nonetheless, not every impairment will constitute a disability within the meaning of this section.

29 C.F.R. § 1630.2(j)(1)(ii).

Douglas asserts that, since his fall at Walmart, he has "suffered with severe headaches, low back pain and hip pain," "walk[s] with a limp," has "pretty much constant pain," and "do[es] things differently than before to accommodate [his] pain." Dkt. No. 20-2 ¶¶ 3-4. But Douglas offers no evidence that his alleged impairments "substantially limits" his ability "to perform a major life activity" as required under Section 12102. Douglas testified that he "is able to do anything [he] want[s] to do in any capacity" – including getting ready for work, driving, cooking, and fishing – but that, if he is "hurting a little bit, it just slows [him] down." Dkt. No. 14 at 18-19. And, when asked if he believed he was disabled, Douglas conceded: "No, I'm not disabled." *Id.* at 47. Douglas therefore has failed to show a material issue of fact as to whether he has an actual disability.

And Douglas fails to show BEK regarded him as having an impairment. "An individual meets the requirement of 'being regarded as having such an impairment' if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A); *see also Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222,

230 (5th Cir. 2015) (finding employer that knew plaintiff was injured, received medical treatment, and missed work because of those injuries "had the knowledge necessary to regard [the plaintiff] as impaired").

Douglas's only argument concerning whether BEK perceived him as impaired is that he "submits he was regarded as disabled." Dkt. No. 20-1 at 18. This "conclusory statement" forces the Court to make an "impermissible inference regarding what [BEK] knew or said." *Weems v. Dallas Indep. Sch. Dist.*, 260 F. Supp. 3d 719, 730 (N.D. Tex. 2017). And, while BEK does not contest that it had knowledge of Douglas's fall and subsequent treatment, "'mere knowledge' of an employee's medical condition does not in itself 'support an inference that [BEK] regarded [him] as disabled.'" *Ariza v. Loomis Armored US, L.L.C.*, 676 F. App'x 224, 227 (5th Cir. 2017) (quoting *Flanner v. Chase Inv. Servs. Corp.*, 600 F. App'x 914, 922 (5th Cir. 2015)).

Further, the undisputed summary judgment evidence shows that Douglas's injury was transitory and minor. An individual will not be regarded as having an impairment if that impairment is "transitory and minor." 42 U.S.C. § 12102(3)(B). "A transitory impairment is an impairment with an actual or expected duration of 6 months or less." *Id.* "Section 12102 does not define what types of impairments are minor, so courts determine whether an impairment is minor on a case-by-case basis considering factors such as symptoms, severity, the treatment required, the risk involved, and any surgical intervention anticipated or necessary." *Stephens v. Big Spring Herald, Inc.*, No. 1:19-cv-123-H, 2021 WL 3030064, at *7 (N.D. Tex. Mar. 29, 2021) (citing *Eshleman v. Patrick Indus., Inc.*, 961 F.3d 242, 249 (3d Cir. 2020)).

In the Fifth Circuit, it is an open question as to who has the burden of showing an impairment is transitory and minor. In *Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298 (5th Cir. 2020), the United States Court of Appeals for the Fifth Circuit noted that it "has not yet decided whether a plaintiff in a 'regarded as' disabled-discrimination case must establish, as part of the prima facie case, that any perceived impairment was not transitory nor minor or whether the transitory and minor nature of the perceived impairment is an affirmative defense that the employer must prove." *Id.* at 302-03. But the *Lyons* Court declined to "wade into that discussion … because, either way, there [were] no facts in dispute regarding the transitory and minor nature of [the plaintiff]'s perceived impairment." *Id.* at 303.

Here, as in *Lyons*, the question of which party has the burden makes no difference: BEK "is entitled to judgment of a matter of law on [Douglas]'s 'regarded as' disability-based discrimination claim" because the undisputed evidence shows that Douglas's impairment "was objectively transitory and minor" and because Douglas "did not point to evidence … that the actual or expected duration of any impairment … was more than six months." *Id.* at 302-03. The record evidence shows that Douglas's doctors released him to return to regular duty the day after his injury, *see* Dkt. No. 14 at 132, and gave him the okay for regular duty at all his follow-up appointments, *see id.* at 110. Douglas's doctor referred him to a limited number of physical and massage therapy sessions. *See id.* And, by his own account, Douglas never had trouble finishing his duties, and his "job was complete every single day." *Id.* at 10. Douglas has not pointed to any evidence to the contrary.

Douglas has therefore not established a prima facie case of discrimination under the ADA.

And summary judgment is also appropriate because Douglas fails to show that BEK's rationale for termination was merely a pretext for discrimination. BEK asserts that it terminated Douglas for violations of company policy, including: "(1) lying about his therapy appointments, (2) leaving work early without permission, (3) asking a co-worker to clock out for him, (4) requesting his massage therapist falsify her records, and (5) lying to BEK when questioned about this conduct." Dkt. No. 13 at 21. By pointing to Douglas's violations of company policies, BEK has met its "burden … of production" to show a non-discriminatory basis for Douglas's termination. *Dick v. J.B. Hunt Transp., Inc.*, 772 F. Supp. 2d 806, 819 (N.D. Tex. 2011); *see also Thomas v. Greystar Mgmt. Servs., L.P.*, No. 3:12-CV-5088-D, 2014 WL 2519165, at *4 (N.D. Tex. June 4, 2014) (holding employer articulated nondiscriminatory reason for termination where employer fired employee who submitted "false expense reimbursement request … in violation of company policy").

Since BEK "articulate[d] a legitimate, nondiscriminatory reason for terminating the employee, the burden again shifts back to the [Douglas] to show that [BEK]'s purported reason is pretextual". *LHC Group*, 773 F.3d at 694. "Pretext is established either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence." *Delaval v. PTech Drilling Tubulars, L.L.C.*, 824 F.3d 476, 480 (5th Cir. 2016) (quotations omitted).

Douglas failed to meet his burden. Douglas offers no evidence, other than his own denials, that each of the reasons given were not legitimate. *See Pope v. Boise Cascade Corp.*, 72 F. App'x 52, 53 (5th Cir. 2003) (per curiam) ("The plaintiff must offer substantial evidence of pretext amounting to more than her subjective belief of discrimination."). And, while Douglas vehemently denies that he lied or committed any of the policy violations, "[t]he inquiry is not whether [Douglas] actually committed the alleged infraction, but whether [BEK] believed that he had and based its decision to discharge him on that belief." *Arrieta v. Yellow Transp., Inc.*, No. 3:05-cv-2271-D, 2008 WL 5220569, at *9 (N.D. Tex. Dec. 12, 2008); *see also Bryant v. Compass Grp. USA Inc.*, 413 F.3d 471, 478 (5th Cir. 2005) ("Management does not have to make proper decisions, only non-discriminatory ones."). Douglas fails to show that there is a material issue of fact as to whether BEK fired him because of his disability. Douglas has therefore not met his burden and BEK's motion must be granted.

## Conclusion

For the reasons stated, the Court GRANTS Ben E. Keith Company's Motion for Summary Judgment [Dkt. No. 12].

SO ORDERED.

DATED: September 1, 2021

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE